SHAKOPEE MDEWAKANTON SIOUX (DAKOTA) COMMUNITY, a federally recognized Indian Tribe, Plaintiff,

v.

Bruce BABBITT, as Secretary of the Interior; and Ada E. Deer, as Assistant Secretary—Indian Affairs, United States Department of the Interior, Defendants,

Louise B. Smith, et al., Amici Curiae.

Civ. No. 3–95–618.

United States District Court, D. Minnesota, Third Division.

Oct. 20, 1995.

Kurt V. Bluedog and Vanya S. Hogen–Kind, Bluedog, Olson & Small, Bloomington, Minnesota; Brian B. O'Neill, Richard A. Duncan and Elizabeth H. Schmiesing, Faegre & Benson, Minneapolis, Minnesota, for Plaintiff.

Robert M. Small, Assistant United States Attorney, Minneapolis, Minnesota; Priscilla Wilfahrt, Field Solicitor, United States Department of the Interior, Minneapolis, Minnesota; and Barbara N. Coen, United States Department of the Interior, Division of Indian Affairs, Washington, D.C., for Defendants.

James H. Cohen, Susan L. Gorman and Arnie H. Frishman, Cohen Law Offices, Santa Fe, New Mexico and Minneapolis, Minnesota, for Amici Curiae.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Shakopee Mdewakanton Sioux (Dakota) Community ("Community") commenced this action seeking judicial review of certain administrative actions taken by the Secretary of the Interior[1] regarding a federal election initiated by the Community and called by the Department of the Interior to amend the Community's tribal constitution pursuant to 25 U.S.C. § 476. The Community's claims arise under the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 461–479, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559 and 701–706. The Community currently challenges the Secretary's decision rejecting the results of the election and ordering an administrative law judge to determine whether certain individuals possess sufficient Mdewakanton blood lineage (¼) to be eligible to vote in a second election on the same proposed amend-

1. Except where otherwise noted, the Court will collectively refer to Defendants Bruce Babbitt, the Secretary of the Interior, and Ada Deer, the Assistant Secretary—Indian Affairs, United States Department of the Interior, as the "Secretary."

2. The Community initially sought a preliminary injunction in addition to summary judgment. By agreement of the parties, the Community's re-

ments. The Community seeks declaratory and injunctive relief. This matter is before the Court on the parties' cross motions for summary judgment.[2] For the reasons set forth below, the Court will grant the Defendants' Motion for Summary Judgment, deny the Plaintiff's Motion for Summary Judgment, and dismiss this action with prejudice.

### Background [3]

The Community is a federally recognized Indian tribe organized pursuant to Section 16 of the IRA, 25 U.S.C. § 476, with a reservation located in Scott County, Minnesota. The Community's constitution defines its membership as individuals included in the Community's 1969 census roll and individuals who possess one-quarter (¼) degree Mdewakanton blood. The Community's current claims arise out of its recent attempt to change this constitutional blood quantum requirement by amending its constitution.

### A. Amendment Process—Legal Framework

■ A brief overview of the statutory and regulatory framework governing the enactment of tribal constitutions and amendments is necessary prior to resolving the parties' current dispute. The process by which a federally recognized Indian tribe may adopt or amend its constitution is set out in 25 U.S.C. § 476, and its associated regulations, 25 C.F.R. §§ 81.1–81.24. Section 476 provides in pertinent part:

### (a) Adoption; effective date

Any Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and by-laws, and any amendment thereto, which shall become effective when—

quest for a preliminary injunction was superseded by the cross motions for summary judgment before the Court. (*See* Pls.' Reply Mem. at 1.) The Community currently seeks permanent injunctive relief.

3. The background in this case is more fully set forth in this Court's September 12, 1995 Memorandum Opinion and Order denying the Amici Curiae's Motion to Intervene. (Doc. No. 24.)

(1) ratified by a majority vote of the adult members of the tribe or tribes at a special election authorized and called by the secretary under such rules and regulations as the secretary may prescribe; and

(2) approved by the Secretary ...

Under § 476(c) and 25 C.F.R. § 81.5, the Secretary is required to call and conduct an election to amend a § 476 tribal constitution upon a request from the tribal government. Such an election is a federal proceeding. *Cheyenne River Sioux Tribe v. Andrus,* 566 F.2d 1085, 1088–89 (8th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 111 (1978).

The regulations promulgated pursuant to § 476(a)(1) establish the procedures for administering the election and resolving election disputes. These regulations require an election board comprised of a Bureau of Indian Affairs ("BIA") officer acting as chair and two members of the tribal governing body be established to monitor and conduct the election. This election board must compile and post a list of "registered voters" at least twenty days prior to the election and must rule on any challenges made regarding the eligibility of voters included or excluded from this list no later than ten days prior to the election. 25 C.F.R. §§ 81.12, 81.13. The regulations state that the election board's voter eligibility determinations "shall be final." 25 C.F.R. § 81.12. The regulations further provide, however, that within three days following the posting of the election results "any qualified voter ... may challenge the election results by filing with the

Secretary ... the grounds for the challenge *together with substantiating evidence....*" 25 C.F.R. § 81.22. If the Secretary determines the objections are valid, the Secretary may order a new election. *Id.*

Once an election is held pursuant to the requirements in § 476(a), the Secretary must review the amended constitution to determine whether it complies with applicable laws. If the Secretary fails to timely review the amended constitution, the amendments are deemed effective by operation of law. In particular, § 476(d) provides:

**(d) Approval or disapproval by Secretary; enforcement**

(1) If an election called under subsection (a) of this section results in the adoption by the tribe of the proposed constitution and bylaws or amendments thereto, the Secretary shall approve the constitution and bylaws or amendments thereto within forty-five days after the election unless the Secretary finds that the proposed constitution, and bylaws or any amendments are contrary to applicable laws.

(2) If the Secretary does not approve or disapprove the constitution and bylaws or amendments within the forty-five days, the Secretary's approval shall be considered as given.

*B. The Community's Amendment Process*

The Community adopted its constitution under § 476(a) in 1969.[4] In 1994, the Community's governing body, the General Coun-

---

4. As originally enacted, Article II, Section 1 of the Community's Constitution provided:

The membership of the Shakopee Mdewakanton Sioux Community shall consist of:

(a) All persons of Mdewakanton Sioux Indian blood, not members of any other Indian tribe, band or group, whose names appear on the 1969 census roll of Mdewakanton Sioux residents of the Prior Lake Reservation, Minnesota prepared specifically for the purpose of organizing the Shakopee Mdewakanton Sioux Community and approved by the Secretary of the Interior.

(b) All children *of at least one-fourth (¼) degree Mdewakanton Sioux Indian blood* born to an enrolled member of the Shakopee Mdewakanton Sioux Community.

(c) All descendants *of at least one-fourth (¼) degree Mdewakanton Sioux Indian blood* who can trace their Mdewakanton Sioux Indian blood to the Mdewakanton Sioux Indians who resided in Minnesota on May 20, 1886, provided they apply for membership and are found qualified by the governing body, and provided further, they are not enrolled as members of some other tribe or band of Indians.

*Section 2.* The governing body shall have the power to pass resolutions [and] ordinances, subject to the approval of the Secretary of the Interior, governing future membership, adoptions and loss of membership.

(Compl. ¶ 9 (emphasis added).)

cil, initiated an election to amend its constitutional membership requirements. (Compl. ¶ 12.) The General Council drafted proposed amendments and, on June 10, 1994, formally requested the Acting Area Director of the Minneapolis Area Office of the Bureau of Indian Affairs to conduct a § 476 secretarial election on the proposed amendments. (Compl. ¶ 15.) After negotiating with the Secretary, the Community modified the proposed amendments and the Assistant Secretary authorized the BIA Minneapolis Area Director to conduct the election. (Compl. ¶¶ 17–19.) The BIA and the Community established an election board ("Election Board") consisting of Elliot Moffett, a BIA representative acting as chair, and two tribal members to conduct the election.

On March 8, 1995, the Community provided the BIA with the names of 116 individuals it recognized as adult persons belonging to the community and entitled to vote in the election. (Compl. ¶ 20.) The Community subsequently posted a "Registered Voter List" containing the names of 111 persons. (Compl. ¶ 21.) Objections to over 50% of these 111 persons were filed with the BIA pursuant to 25 C.F.R. § 81.13. (Compl. ¶ 21.) The Election Board determined that 44 individuals did not meet the Community's constitutional membership criteria and accordingly removed them from the list. (McNeal Aff., Ex. G.) The Election Board rejected the remaining 67 challenges to the Community's list.

The Secretary conducted the election on the proposed amendments on April 19, 1995. The amendments passed by a vote of 35 in favor and 27 opposed. (Compl. ¶ 28.) The Election Board certified the election results on April 19, 1995. (McNeal Aff., ¶ 9.) Pursuant to 25 C.F.R. § 81.22, challenges to 40 individuals were timely filed with the Secretary. (Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. 3.) These challenges were based on the blood lineage requirement contained in the Community's constitution, and alleged that 18 constitutionally qualified "members" were not allowed to vote, while 22 individuals who were not constitutionally qualified "members" voted. (*Id.*)

On June 2, 1995—43 days after the election—the Assistant Secretary issued a decision letter regarding the 40 challenges. (*Id.*) The Assistant Secretary deferred to the Election Board on 17 of the challenges, but did not defer to the Election Board or otherwise resolve the remaining 23 challenges. (*Id.*) Instead, the Secretary issued an order concluding:

> the Department [of the Interior] cannot approve the election results due to alleged irregularities in the determination of voter eligibility. A hearing examiner or administrative law judge will be appointed to determine the eligibility of twenty-three individuals who are challenged before me pursuant to 25 C.F.R. § 81.22. After a determination as to their eligibility is made, the [Department of the Interior] Deputy Commissioner will call a new election.

(*Id.* at 1.) The Secretary issued a second order on June 2, 1995, authorizing an administrative law judge to determine the Mdewakanton blood lineage of an additional 40 persons.[5] (Defs.' Ex. 4, attach.)

### C. Litigation

On June 30, 1995, the Community filed a verified Complaint seeking an order (1) declaring unlawful the Secretary's acts: (a) purporting to abrogate the results of the April 19, 1995 secretarial election; (b) overturning "final agency action by the [E]lection [B]oard determining all challenges to the eligibility of persons to vote in that secretarial election"; (c) appointing an administrative law judge to determine the Mdewakanton blood quantum and eligibility to vote as tribal members of between 23 and 63 persons; (d) ordering a new secretarial election; and (2) declaring that the amended tribal constitution "approved" by the voters of the Community in the April 19, 1995 election is valid and

---

5. This second order relates to determinations regarding membership for the purposes of receiving funds from a federally administered trust referred to by the parties as "Docket 363 distributions." These additional membership determi-nations are not part of the proceeding currently challenged, and the Secretary's authority regarding these determinations is not in any way affected by this Memorandum Opinion and Order.

approved as a matter of law. (Compl. §§ A, C.) The Community further requests an injunction permanently enjoining the Secretary or his agents from proceeding with the blood quantum determinations and the second election as ordered in the Secretary's June 2, 1995 decision letter. (Compl. § D.)

On August 16, 1995, several of the individuals who challenged the Election Board's eligibility determinations filed a Motion to Intervene in this action. (Doc. No. 12.) These individuals sought to interpose a complaint alleging a variety of claims against the Secretary arising out of the April 19, 1995 election. The Motion to Intervene was denied (*see* Mem. Op. and Order dated September 12, 1995), and these individuals were granted leave to participate in this action as amici curiae. This matter came before the undersigned at a hearing held on September 21, 1995. All parties, including amici curiae, submitted briefs and participated in oral argument.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1361, 1362, 2201, and 25 U.S.C. § 476(d)(2).

**Discussion**

*I. Standard of Decision*

■■■ Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is particularly appropriate where the unresolved issues are primarily legal rather than factual. *Schrier v. Halford,* 60 F.3d 1309, 1310 (8th Cir.1995). In the present case, the parties have agreed that the material facts are not in dispute and

that this matter is ripe for summary resolution based solely on the legal questions presented.

*II. Analysis*

The Community claims the amended constitution approved at the April 19, 1995 election is effective as a matter of law. The Community asserts (1) the Secretary lacked authority to review the Election Board's voter-eligibility determinations pursuant to 25 C.F.R. § 81.13 and (2) the amended constitution must be deemed effective because the Secretary did not "approve or disapprove" it within the forty-five day period prescribed by § 476(d)(2). The Defendants claim the Secretary is not bound by the Election Board's eligibility determinations and that the forty-five day time limit imposed by § 476(d)(2) does not apply because the election did not satisfy the prerequisites set out in § 476(a). The Court will examine each of these issues in turn.

*A. 25 C.F.R. § 81.13*

The Plaintiff's first claim relates to the Secretary's interpretation of § 81.13. This regulation provides in pertinent part:

The election board shall determine the eligibility of any written claim to vote presented to it by one whose name does not appear on the official list of registered voters as well as any written challenge of the right to vote of anyone on the list. *Its decision shall be final.* It shall rule on all claims no later than ten days before the election.

25 C.F.R. § 81.13 (emphasis added). The Community claims the term "final" means final agency action and as such expressly precludes any further secretarial review of the Election Board's voter eligibility determinations. The Secretary claims this provision does not mean "final for the Department," but rather "final" for the purposes of allowing the election to proceed and "final" for the purposes of filing an appeal.

■■■ The Court must give substantial deference to an agency's interpretation of its own regulations. *Thomas Jefferson Univ. v. Shalala,* — U.S. ——, ——, 114 S.Ct. 2381,

2386, 129 L.Ed.2d 405 (1994). Provided the agency's interpretation "does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991) ("in situations in which the meaning of regulatory language is not free from doubt, the reviewing court should give effect to the agency's interpretation so long as it is reasonable") (quotations and citations omitted); *Shalala v. St. Paul–Ramsey Medical Center*, 50 F.3d 522, 529 (8th Cir.1995) ("the 'plainly erroneous' standards should be applied to the agency's interpretation where the meaning of the agency rule or regulation is ambiguous or in doubt"). Thus a court may not substitute its construction of a regulation for that of the agency even when it determines another interpretation is more reasonable. *See Miller v. United States*, 65 F.3d 687, 689 (8th Cir.1995).

■ The Court finds the meaning of the term "final" as used in § 81.13 is not "free from doubt." *Martin*, 499 U.S. at 150, 111 S.Ct. at 1176. The regulation is silent with respect to whether the Election Board's decision constitutes the *Secretary's* final decision or whether it merely constitutes a final decision for the purposes of administering the election. Notably, when the Secretary intends a decision to be final for the Depart-

ment of the Interior, it has done so with unmistakable clarity by using the language "final for the Department." *See* 25 C.F.R. § 83.11(2) (stating "the Assistant Secretary's decision shall be final for the Department"); 25 C.F.R. § 2.20(c) (stating "[i]f the decision is signed by the Assistant Secretary—Indian Affairs, it shall be final for the Department and effective immediately"); 25 C.F.R. § 2.20(g) (stating "[t]he decision shall be final for the Department and effective immediately unless the Assistant Secretary—Indian Affairs provides otherwise in the decision").[6] Although there may be occasions when the Secretary has not used the language "final for the Department" when a decision is treated as final for the agency, the issue for the Court is not whether the term "final" standing alone necessarily means the Secretary may review it, the issue is simply whether the term "final" is ambiguous with respect to whether it permits secretarial review.[7] The Court finds it is.

■ Having concluded that § 81.13 is susceptible to several interpretations, the Court must uphold the Secretary's interpretation so long as it is "reasonable." In its June 2, 1995 decision letter, the Assistant Secretary provided the following explanation for its interpretation of § 81.13:

The Department is extremely reluctant to inject itself into matters related to tribal membership and eligibility to vote in tribal elections. However, elections on the adoption or amendment of tribal constitutions under the Indian Reorganization Act of 1934 are Federal elections for which the

---

**6.** The Secretary has used the language "final for the Department" with respect to decisions made in numerous other regulations. *See* 25 C.F.R. §§ 2.6(c), 2.7(c), 2.9(c), 41.6(e), 41.11(c), 41.27(c), 62.10(a), 62.11, 67.12, 83.10(o), 83.11(h), 123.10(b), 175.11, 175.13, 175.61(c), 271.82(b), 278.8.

**7.** In its Memorandum, the Defendants cited several examples in the regulations where the Secretary has used the language "final for the Department" to show the language "final" by itself did not necessarily mean final for the Department. The Plaintiffs characterize this argument as follows: "[t]he [D]efendants essentially argue that because an entirely separate set of regulations *explicitly provides* for review of a final determination, the Secretary therefore has *implicit* authori-

ty to review the election board's decisions under 25 C.F.R. § 81.13." (Pls.' Reply Mem. at 10 (emphasis in original).) As noted, this characterization misconstrues the analysis the Court must employ to determine whether an agency's interpretation of its regulations violates the law. The Court need not find the absence of the language "final for the Department" *necessarily* implies the term "final" means final only for the purposes of the election and therefore "authorizes" review of the Election Board's decision. The Court need only find that, in the absence of the language "final for the Department," there is some doubt as to whether the term "final" means *final for the conduct of the election or final for the Department.*

Secretary has adopted regulations and for which he is accountable. . . .

. . . . .

[T]he finality of the election board's decisions is best viewed as the completion of but one step on the way to the actual vote on the election. It clears the path for the actual election to take place in an orderly and timely manner, while § 81.22 provides a mechanism for those who are not determined eligible, or who feel that others are not eligible, to make their case to the Secretary if they can produce substantiating evidence. It is necessary to make the election board's decisions final for purposes of holding the election because under the Department's appeal regulations, no decision is effective during the time it is appealable unless it is made final. 43 C.F.R. § 4.21, 25 C.F.R. § 2.6. Thus if the election board's decisions were made final by the regulations, a handful of challenges to their decisions could frustrate an entire tribe from considering and voting on a fundamental constitutional issue. With the adoption of the statutory time frames in the 1988 amendments of the IRA, the need to get the issue before the voters in a timely manner has become a congressional mandate.

(Def.'s Ex. 3 at 2.)

The Court finds the agency's interpretation as enunciated by the Assistant Secretary is "reasonable." First, as noted, the absence of the language "final for the Department" suggests that the term "final" standing alone does not mean final for the Department.

More importantly, the Secretary's interpretation is consistent with the regulatory scheme established in § 81. Section 81.22 provides:

**Contesting of election results**

Any qualified voter, within three days following the posting of their results of an election, may challenge the election results by filing *with the Secretary* through the officer in charge the grounds for the challenge, *together with substantiating evidence.* If in the *opinion of the Secretary,* the objections are valid and warrant a recount or new election, *the Secretary* shall order a recount or a new election. . . .

25 C.F.R. § 81.22 (underscored emphasis added.) This section explicitly provides the Secretary with broad authority to review objections to the election. Nothing in this section suggests the Election Board's eligibility determinations are excluded from the scope of this review.[8] Indeed, as the Secretary noted, allowing objections to voter eligibility to be made "final for the Department" based solely on the procedures available under § 81.13 is not consonant with the federal conception of due process. The limited procedure available under § 81.13 does not provide notice or an opportunity to respond with evidence to an individual whose eligibility to vote is challenged.[9]

Moreover, the election to amend a tribe's § 476 constitution is a federal election. The right to vote in this election is a federal right protected by the Federal Constitution and the results of this election may fundamentally affect federal rights guaranteed to federal-

---

**8.** The Plaintiffs claim the review described in § 81.22 is limited to "election[-]day irregularities such as voter intimidation or fraud in tabulation of votes." (Pls.' Reply Mem. at 11.) Although the text of § 81.22 does not support this limited construction, such a construction is plausible. This, however, is not independently relevant. The Court may not select which interpretation of § 81.22 it deems most reasonable. Rather, the Court must defer to the interpretation given by the Secretary so long as that interpretation is tenable.

**9.** In the June 2, 1995 decision letter, the Assistant Secretary specifically recognized this concern, explaining:

In this case there is substantiating evidence that eligible voters may have been denied the opportunity to vote and that persons were al-

lowed to vote who did not meet the threshold tribal constitutional membership requirements. The number of theses persons is sufficient to change the outcome of this very close election. Under these unusual circumstances, the Secretary does have the authority to evaluate the merits of the protests. This review is especially necessary since at least some challenges to the eligibility of registered voters were made without notice to those individuals. Those challenged voters accordingly were not provided an opportunity to present evidence or argument as to their entitlement to vote. A conclusion that the Secretary cannot review such determinations by the election board presents serious due process concerns.

(Defs.' Ex. 3 at 2.)

ly recognized tribal "members." A § 81.13 election board is comprised of one federal representative and two tribal members with each member having an equal vote. As a result, under the Plaintiff's limited construction of § 81.13, decisions may be made regarding federal rights without federal adjudication or review. Although Congress amended § 476 to eliminate unreasonable delay in § 476 elections, there is no indication Congress intended to irrevocably abdicate authority over such federal issues to two members of a tribal government.[10] Indeed, Plaintiff's construction of § 81.13 eliminates *all* review, tribal or federal, to redress an erroneous conclusion that an individual was not eligible to vote.

For these reasons, as well as the reasons set forth in the June 2, 1995 decision letter, the Court finds the Secretary's construction of § 81.13 "reasonable." The Secretary had authority to review the eligibility determinations of the Election Board.

### B. § 476(d)

■ In addition to challenging the Secretary's authority to review the Election Board's eligibility determinations, the Community challenges the Secretary's interpretation of § 476(d). As with an agency's interpretation of its regulations, an agency's interpretation of a statute it administers is entitled to substantial deference when Congress has not addressed the "precise question at issue." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (explaining "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"); *accord Miller v. United States,* 65 F.3d 687, 689 (8th Cir. 1995); *National Grain & Feed Ass'n v. United States,* 5 F.3d 306, 308 (8th Cir.1993). Courts must uphold an agency's position so long as it is a "permissible construction of

the statute." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–82.

■ As set forth in *Chevron,* the Court must begin its analysis of the Secretary's decision by considering the language of the challenged statute. Section 476(d) provides in pertinent part:

**(d) Approval or disapproval by Secretary; enforcement**

(1) If an election called under subsection (a) of this section results in the adoption by the tribe of the proposed constitution and bylaws or amendments thereto, the Secretary shall approve the constitution and bylaws or amendments thereto within forty-five days after the election unless the Secretary finds that the proposed constitution, and bylaws or any amendments are contrary to applicable laws.

(2) If the Secretary does not approve or disapprove the constitution and bylaws or amendments within the forty-five days, the Secretary's approval shall be considered as given.

The Community claims the amended constitution is "approved as a matter of law" under § 476(d)(2) because the Secretary did not "approve or disapprove" it within forty-five days after the election. The Secretary claims the requirements of § 476(d) do not apply to the Community's amended constitution. According to the Secretary's construction of § 476, the provisions of § 476(d) do not apply to render amendments effective as a matter of law until an election which complies with § 476(a) has been held and the proposed amendments are duly approved by a majority vote of the adult "members" of a tribe.

The "precise question at issue" in this case is whether § 476(d)(2) applies and renders an amendment effective as a matter of law in the absence of a § 476(a)(1) election. Section 476(d)(2) does not specifically address this question, other than to say it applies

---

**10.** The Court does not, in any sense, question the competence or motives of the tribal representatives on the election board. This is purely a question regarding the Community and the federal government's respective sovereign powers in the conduct of a federal election. The Communi-

ty's construction of § 81.13 functionally eliminates *all* federal control over protecting federally secured rights; the two tribal members may always out-vote the single federal representative, leaving an aggrieved party with no federal remedy for the deprivation of federal rights.

"within the forty-five days." Read in the context of § 476(d)(1), which refers to an "election called under subsection (a)" that "results in the adoption by the tribe of the proposed . . . amendments," it appears that the referent for the forty-five day period is the election explicitly referred to in § 476(d)(1). Under this construction, the forty-five day period would not commence until after an election which complied with § 476(a) had been held. Based on the language of § 476(d), the Court finds that § 476(d) does not unambiguously require the forty-five day period to commence prior to a determination that an election which complies with § 476(a) has been held.

Since § 476(d) does not explicitly require the forty-five day period to commence prior to a § 476(a) election, the Court must consider whether the Secretary's interpretation of § 476 is "reasonable." The Court finds that it is. Section 476(a) governs when amendments to a tribal constitution become legally effective. As set forth above, this section provides:

> Any Indian tribe . . . may adopt an appropriate constitution and bylaws, and any amendment thereto, which shall become effective when—
>
>> (1) ratified by a majority vote of the adult members of the tribe or tribes at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; *and*
>>
>> (2) approved by the Secretary pursuant to subsection (d) of this section.

25 U.S.C. § 476(a) (emphasis added). Under the Secretary's interpretation of § 476, the forty-five day time limit contained in § 476(d)(2) is not triggered until the threshold requirement in § 476(a)(1) has been satisfied. This interpretation is consistent with the scheme set out in § 476. Section 476(a)

contains two explicit requirements. First, the amendments to a tribal constitution must be ratified by a majority vote of the adult members of the tribe under the Secretary's rules. Second, the Secretary must approve these amendments under either of the mechanisms of § 476(d) (viz. secretarial approval or inaction). The Community fails to recognize these distinct requirements. The Community argues that the election results are effective because they have satisfied § 476(d)(2). However, election results are only made effective through satisfying both components of § 476(a); the alternative methods of secretarial approval relate only to the second component of § 476(a). Under the most logical reading of the statute, the second requirement presupposes the first has been satisfied.[11] At the very least, the Court finds the Secretary's construction "permissible." As such, it will be upheld.

█ Having concluded that the provisions of § 476(d) do not apply until an election satisfies the conditions of § 476(a)(1), the Court must consider whether the election satisfied these conditions. The Court finds it did not. The Secretary determined that the objections to the Election Board's eligibility determinations placed "the fundamental integrity of the election in doubt" and that it "cannot approve the election results." (Defs.' Ex. 3 at 9, 1.) Section § 476(a) requires an election to amend a tribal constitution be conducted according to rules established by the Secretary. The Secretary thereafter promulgated 25 C.F.R. 81.22, which provides the Secretary with authority to reject an election board's voter eligibility determinations and order a new election, as one of the rules for conducting a § 476 election. Acting pursuant to 25 C.F.R. § 81.22, the Secretary concluded the objections to the election were valid and that a new election would be called after a determination of voter eligibility. Since the Secretary disap-

---

11. The language of § 476(d) itself indicates it does not apply unless § 476(a)(1) has been satisfied. Section 476(d)(1) only applies "[i]f an election called under subsection (a) results in the adoption by the tribe of the proposed constitution and bylaws or amendments thereto." It follows that § 476(d)(1) does not apply when an election does not satisfy the requirements of § 476(a). Section 476(d)(2) provides that secre- tarial approval may be deemed given *"[i]f the* Secretary does not approve or disapprove the . . . amendments within the forty-five days." (Emphasis added.) Although § 476(d)(2) does not explicitly refer to subsection (a), as noted above, the most logical referent for the forty-five day period is the date of the election amending the constitution pursuant to the requirements of subsection (a).

proved the election results pursuant to authority under § 81.22 and § 476(a), the amendments at issue were not "ratified" by a majority of the Community's "members" "under such rules and regulations" as the Secretary prescribed. As a result, the Community did not satisfy the first requirement under § 476(a) and thus did not trigger time limit in § 476(d)(2). Accordingly, based on the Secretary's interpretation of § 476, the amendments to the Community constitution were not approved as a matter of law.

Although not argued by the Secretary, the June 2, 1995 decision letter also demonstrates the Secretary in fact "disapproved" the Community's amendments within the forty-five day period set out in § 476(d)(2). This is an independent basis for finding the proposed amendments did not become effective as a matter of law. The Community presumes the Secretary did not timely disapprove the amendments because he based his decision on the integrity of the election rather than the *substance* of the proposed amendments. The text of § 476(d)(2) does not limit the Secretary's authority to the substance of the proposed amendments. Rather, § 476(d)(2) merely requires the secretary to "disapprove the ... amendments" within forty-five days. The Secretary did just that: in his June 2, 1995 decision letter—filed forty-three days after the election—the Secretary stated he "cannot approve the election results" and instead ordered a new election. (Defs.' Ex. 3.) By disapproving the election results, the Secretary expressly declined to make the amendments legally effective. He therefore "disapproved" the proposed amendments.

### Conclusion

Based on the foregoing, and upon all the files, records and proceedings herein, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment (Doc. No. 3) is **DENIED**;

(2) Defendants' Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

(3) Plaintiff's Verified Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**