**SAC AND FOX NATION, Plaintiff,**

v.

**Gayle NORTON, Secretary of the United States Department of the Interior, Defendant.**

Case No. CIV–05–1234–R.

United States District Court, W.D. Oklahoma.

Nov. 27, 2006.

G. William Rice, G. William Rice PC, Cushing, OK, Gregory H. Bigler, Law Office Of Gregory Bigler, Sapulpa, OK, for Plaintiff.

Steven K. Mullins, Tom Majors, U.S. Attorney' Office, Oklahoma City, OK, for Defendant.

### AMENDED ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are the motion for summary judgment of the Plaintiff, The Sac and Fox Nation, (Document No. 16) and the cross-motion for summary judgment of the Defendant, Gale Norton, Secretary of the Department of the Interior (Document No. 19).[1] Oral argument was heard in open court on September 1, 2006. The Plaintiff appeared by its counsel, Greg Bigler and G. William Rice; and the Defendant appeared by its counsel, Assistant United States Attorney Tom Majors.

In its Complaint, the Plaintiff seeks an order declaring that the Defendant Secretary ·of the Interior has approved certain amendments to the constitution of the Sac and Fox nation by operation of law; and enjoining the Defendant from "acting, holding or ruling that the [amendments are] unapproved." The Defendant Secretary of the Interior argues that the Court should not declare the amendments to be approved because the Court lacks jurisdiction, or because the Plaintiff has failed to exhaust its administrative remedies. In the alternative, the Defendant argues that the Court should abstain from exercising jurisdiction in this case. The Defendant argues with equal vehemence that the Secretary has already approved the amendments, so that the Plaintiff's claims are moot.

I. *Summary of the Evidence.*

The Plaintiff, the Sac and Fox Nation, is a federally recognized Indian Tribe. See Title 25 U.S.C. § 479a. The Sac and Fox Nation governs itself under a Constitution and Charter approved by the Secretary of the Interior on June 19, 1987 and ratified by tribal members on July 24, 1987. Article VII of the Sac and Fox Nation's charter provides that the Sac and Fox Nation shall have all of the rights afforded to other tribes under 25 U.S.C. §§ 476 and 477.[2]

---

1. As the Defendant points out, Secretary Gale Norton resigned from the Department of the Interior effective March 31, 2006. Dirk Kempthorne was confirmed as the Secretary of the Interior on May 26, 2006, and is automatically substituted as the Defendant pursuant to Fed. R. Civ. Pro. 25(d)(1). Future filings will reflect this substitution.

2. Article VII of the Sac and Fox charter provides as follows:

 "**Article VII Indian Reorganization Act Provisions**

Pursuant to Section 3 of the Act of June 26, 1936, (49 Stat. 1967), and in addition to those powers and authorities vested in the Sac and Fox Nation by existing law, the following essential governmental powers, rights and privileges secured to organized Indian tribes pursuant to the Act of June 18, 1934, (48 Stat. 984), are hereby conveyed to the Government of the Sac and Fox Nation.

 a. Sections 2, 4, 7, 16 and 17 of the Act of June 18, 1934, (48 Stat. 984), are hereby extended to, and shall be in full force and

On May 10, 2004, the Sac and Fox Nation's Business Committee adopted Resolution No. SF–04–88, proposing an amendment to the tribe's constitution, and requested the Secretary of the Interior to authorize an election for tribal members to vote on the proposed amendment. The proposed amendments would have added a provision eliminating any requirement of a referendum vote to approve tribal claims and the tribal programs budget,[3] and a provision which would alter the respective powers and authority of the tribe's Business Committee and Governing Council.[4] On June 16, 2004, the Regional Director of the Southern Plains Region of the Bureau of Indian Affairs (B.I.A.) authorized tribal officials to conduct an election in accordance with 25 C.F.R. part 81.

The Secretary of the Interior is charged by statute with certain supervisory and oversight responsibilities over the adoption and amendment of constitutions of Indian tribes, including elections for the approval of amendments to tribal constitutions. Title 25 U.S.C. § 476, 25 C.F.R. § 81.4. The election was conducted on August 20, 2004. One hundred eighty seven voting members of the tribe voted to approve the proposed amendments, and 143 voted against the proposed amendments.

On August 23, 2004, twenty-nine members of the Sac and Fox nation filed a petition with the Bureau of Indian Affairs contesting the election results. The protesting tribal members alleged in their petition that the election violated tribal law by misquoting certain language from the tribal constitution; and that the election was procedurally flawed in several respects. On December 14, 2004, the Regional Director of the B.I.A.'s Southern Plains Office reviewed the protest, and

---

effect as to the Sac and Fox Nation, and the Sac and Fox Nation shall in all respects be deemed upon equal footing, and shall be entitled to all the authority, rights, and privileges of a tribe organized pursuant to the Act of June 18, 1934, (48 Stat. 984)."

**3.** Prior to the amendments in question, Article II, Section 3 of the Sac and Fox Nation's constitution provided:

"The Governing Council of the Sac and Fox Nation shall have the authority to take final action on any matter within its delegated powers at a regular or special meeting of the Governing Council. No referendum vote of the Governing Council shall be necessary."

The proposed amended version of Article II, Section 3 provides:

"As required by Article VII, Section 2, following the meetings of the Governing Council, the Election Board shall conduct an election pursuant to the election ordinance on the issues presented at a meeting of the Governing Council where action was taken to place a matter upon the ballot, provided, that no referendum vote shall be necessary to approve the tribal claims and tribal programs budget."

**4.** Prior to the amendments in question, Article III, Section 2 of the Sac and Fox Nation's Constitution provided:

"*Section 2.* The Business Committee shall have authority to act on behalf of the tribe in all matters, except the Governing Council of the Sac and Fox Nation shall have the authority to take final action on any matter at a regular or special meeting of the Governing Council; the final action so taken by the Governing Council shall be binding on all elected officers and the Business Committee. No referendum vote of the Governing Council shall be necessary."

The proposed amended version of Article HI, Section 2 provides:

"*Section 2.* The Business Committee shall have power to appoint subordinate committees and representatives, to transact business and otherwise speak or act on behalf of the tribe in all matters on which the tribe is empowered to act, now, or in the future, and to hire and employ legal counsel to represent the tribe; provided, that when the Governing Council acts within the powers specifically delegated to it by this Constitution, such action shall be binding on all elected officers and the Business Committee."

denied the protesters' challenge to the election. Thereafter, the protesters appealed to the Department of the Interior's Board of Indian Appeals. To date, no decision has been made by the Board of Indian Appeals, although more than 45 days have passed since the election.[5] The Plaintiff alleges that it has suffered, and is suffering, irreparable harm by virtue of the uncertainty as to whether the Defendant will uphold the election and approve the amendments.

## II. *Jurisdiction.*

■ The Plaintiff invokes federal jurisdiction under Title 25 U.S.C. § 476(d)(2) of the Indian Reorganization Act. Under Title 25 U.S.C. § 476(c),[6] the Secretary of the Department of the Interior must call and hold a tribal election after receipt of a tribal request for an election to ratify a proposed amendment to the tribe's constitution. The Act requires the Secretary to approve or disapprove such amendments within 45 days of the election, and provides that if the Secretary has not acted within 45 days, "the Secretary's approval should be considered as given." Section 476(d) further provides that "[a]ctions to enforce the provisions of this section may be brought in the appropriate Federal district court."

The Defendant argues that Section 476(d)(2) of the Indian Reorganization Act does not vest the Court with jurisdiction because the Act is not applicable to the Sac and Fox Nation, citing Section 473 of the Act. On its face, Title 25 U.S.C. § 473 appears to exclude certain Oklahoma Indian tribes, including the Sac and Fox Nation, from coverage under the Indian Reorganization Act.[7] In response, the

---

5. The Indian Reorganization Act, at Title 25 U.S.C. § 476(d) provides:

"(d) Approval or disapproval by Secretary; enforcement

(1) If an election called under subsection (a) of this section results in the adoption by the tribe of the proposed constitution and bylaws or amendments thereto, the Secretary shall approve the amendments within forty-five days after the election unless the Secretary finds that the proposed constitution and bylaws or any amendments are contrary to applicable laws.

(2) If the Secretary does not approve or disapprove the constitution and bylaws or amendments within the forty-five days, the Secretary's approval shall be considered as given. Actions to enforce the provisions of this section may be brought in the appropriate Federal district court."

6. Section 476(c) provides:

"(c) Election procedure; technical assistance; review of proposals; notification of contrary-to-applicable law findings

(1) The Secretary shall call and hold an election as required by subsection (a) of this section—...

(B) within ninety days after receipt of a tribal request for an election to ratify an amendment to the constitution and bylaws.

(2) During the time periods established by paragraph (1) the Secretary shall—...

(B) review the final draft of the constitution and bylaws, or amendments thereto to determine if any provision therein is contrary to applicable laws.

(3) After the review provided in paragraph (2) and at least thirty days prior to the calling of the election, the Secretary shall notify the tribe, in writing, whether and in what manner the Secretary has found the proposed constitution and bylaws or amendments thereto to be contrary to applicable laws."

7. Title 25 U.S.C. § 473 provides:

"Application generally.... Sections 4, 7, 16, 17, and 18 of this Act [25 U.S.C. §§ 464, 467, 476, 477, 478] **shall not apply to** the following-named Indian tribes, the members of such Indian tribes, together with members of other tribes affiliated with such named tribes located in the State of Oklahoma, as follows: Cheyenne, Arapaho, Apache, Comanche, Kiowa, Caddo, Delaware, Wichita, Osage, Kaw, Otoe, Tonkawa, Pawnee, Ponca, Shawnee, Ottawa, Quapaw, Seneca, Wyandotte, Iowa, **Sac and Fox**, Kickapoo, Pottawatomi, Cherokee, Chickasaw, Choctaw, Creek, and Seminole."
(Emphasis added).

Plaintiff contends that the federal Oklahoma Indian Welfare Act, Title 25 U.S.C. § 503, enables the Sac and Fox Nation to claim the same rights and privileges as other tribes under the Indian Reorganization Act.

Title 25 U.S.C. § 503 grants "recognized" Oklahoma tribes an opportunity to claim any of the "rights and privileges secured to an organized Indian tribe" under the Indian Reorganization Act, 25 U.S.C. § 461, *et seq.*, by adopting a charter of incorporation claiming such rights.[8] *Indian Country, U.S.A. v. Oklahoma Tax Commission*, 829 F.2d 967, 981 (10th Cir. 1987), *cert. denied sub nom.*, *Oklahoma Tax Commission v. Muscogee (Creek) Nation*, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988).

The Plaintiff's charter of incorporation specifically claims those rights and privileges secured to Indian tribes organized under the Indian Reorganization Act, including those powers which "may in the future be delegated to the tribe" by the federal government. *See Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439 (D.C.Cir.1988). The Plaintiff's charter was ratified by the tribe's eligible voters, and approved by the Secretary of the Interior on June 19, 1987. (Plaintiff's Exhibit 2, Federal Corporate Charter of the Sac and Fox Nation, Article VII, subparagraphs a through m.).[9]

---

8. Title 25 U.S.C. § 503 provides, in pertinent part:

"Any recognized tribe or band of Indians residing in Oklahoma shall have the right to organize for its common welfare and to adopt a constitution and bylaws, under such rules and regulations as the Secretary of the Interior may prescribe. The Secretary of the Interior may issue to any such organized group a charter of incorporation, which shall become operative when ratified by a majority vote of the adult members of the organization voting.... Such charter may convey to the incorporated group, in addition to any powers which may properly be vested in a body corporate under the laws of the State of Oklahoma, the right to participate in the revolving credit fund and to enjoy any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934 (48 Stat. 984) [25 U.S.C.A. § 461 et seq.]...."

An earlier version of Section 503 was identical, except that it listed the specific sections of the Indian Reorganization Act whose benefits might be claimed by a tribe in its charter:

"... Such charter may convey to the incorporated group, in addition to any powers which may properly be vested in a body corporate under the laws of the State of Oklahoma, the right to participate in the revolving credit fund and to enjoy any other rights or privileges secured to an organized Indian tribe under sections 461, 462, 473, 464, 465, 466 to 470, 471 to 473, 474, 475, 476 to 478, and 479 of this title."

9. Article VII of the Plaintiff's corporate charter provides, in part:

"Pursuant to Section 3 of the Act of June 26, 1936, ... and in addition to those powers and authorities vested in the Sac and Fox Nation by existing law, the following essential governmental powers, rights, and privileges secured to organized Indian tribes pursuant to the Act of June 18, 1934, ... are hereby conveyed to the Government of the Sac and Fox Nation....

j. The Sac and Fox Nation shall have the right, power, and privilege to exercise such further powers as may in the future be delegated to the tribe by the Secretary of the Interior or by any duly authorized officer or agency of the Federal government.

k. The Sac and Fox Nation shall have the right, power, and privilege to enjoy, possess, and exercise any other right or privilege secured to an Indian tribe organized under the Act of June 18, 1934 ..., as incorporated by reference through Section 3 of the Oklahoma Indian Welfare Act of June 26, 1936, ... including all of those statutory or inherent rights and powers vested or recognized in such Indian tries by existing law, and any powers and authority vested in a body corporate under the laws of the State of Oklahoma not inconsistent with the tribal constitution or this charter ...

"The foregoing express delegation of authorities is supplemental to, and expressive of, a portion of the general authorities delegated to the Business Committee in the

The Defendant initially argued in its briefs that Section 476(d)(2) is inapplicable to the Plaintiff because it became effective on November 1, 1988, after the approval of the Plaintiff's charter and constitution on June 19, 1987. The Defendant offers no authority in support of its argument that only those tribes whose charters and constitutions were adopted after the effective date of Section 476(d)(2) are entitled to enforce its provisions in federal court, and the Court finds no support for such a construction.[10]

At the hearing on the parties' motions, the Defendant argued that the Plaintiff's interpretation of Section 503, as enabling it to bring a claim for enforcement of the Secretary's obligations under Section 476 is "strained" and "tortured." The Court disagrees. In clear and specific language, Section 503 authorizes Oklahoma tribes, such as the Sac and Fox Nation, to claim any of the rights and privileges available to other organized Indian tribes under the Indian Reorganization Act, which would, of necessity, include Section 476.

---

Constitution of the Sac and Fox Nation and is designed and intended to take advantage of all the delegations of authority from the Federal government to the government of the Sac and Fox Nation pursuant to the within noted, and all other Acts of Congress. . . . "

10. In its brief the Defendant cites *Logan v. Andrus*, 457 F.Supp. 1318 (N.D.Okla.1978) and *Seminole Nation of Oklahoma v. Acting Director*, 24 I.B.I.A. 209, 1993 WL 530285 (Int. Bd. Indian App.1993) for the proposition that the Sac and Fox Nation is not entitled to invoke the jurisdiction provisions of the Indian Reorganization Act, but these cases are distinguishable. In *Logan*, the court held that the Osage tribe was excluded from coverage under the Indian Reorganization Act, citing specific statutory exclusions applicable to the Osage tribe. The court held, *inter alia*, that neither the Indian Reorganization Act nor the federal Oklahoma Indian Welfare Act applied to the Osage Nation, citing provisions of both statutes which exclude the Osage Nation and Osage County, Oklahoma. *Logan*, 457 F.Supp. at 1328, fn. 39; 1329. The Osage tribe was also excluded from coverage under the Oklahoma Indian Welfare Act, 25 U.S.C. § 501, *et seq*. In contrast, the Sac and Fox Nation is not excluded from the Oklahoma Indian Welfare Act, which confers upon any "recognized" tribes residing in Oklahoma the right to adopt a constitution and bylaws, and "any other rights secured to an organized tribe." See Title 25 U.S.C. § 503. In *Seminole Nation, supra,* the tribe sought review of an administrative decision by a Bureau of Indian Affairs official, to disapprove a proposed amendment to the tribe's constitution, which would have eliminated the requirement for B.I.A. approval of further constitutional amendments. The administrative judges found that the B.I.A. official acted within his discretion in disapproving the amendment, reasoning that the plaintiff tribe had not adopted a statutory charter pursuant to Section 503, which would have afforded the Tribe additional rights. The *Seminole* court's reference to Section 503 indicates that the court understood that, like other Oklahoma tribes, the Seminole Nation could have adopted a charter under the Oklahoma Indian Welfare Act. Because the Seminole Nation elected not to adopt such a charter, it did not have the additional rights afforded under the Act. In contrast, the Sac and Fox Nation has adopted a charter pursuant to Section 503, claiming the rights conferred under Section 476. Moreover, as the Plaintiff points out, if the Sac and Fox Tribe is excluded from the Indian Reorganization Act because its charter was adopted before the effective date of the 1988 amendments to the Act, then all tribes which adopted their constitutions and charters before that date would be excluded from the Act. Such a position seems untenable, and appears to be inconsistent with Section 476(f), which provides, in part, that departments and agencies of the United States "shall not . . . make any decision or determination pursuant to [25 U.S.C. § 461, *et seq.*] with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes." The Defendant's position would establish two classes of federally recognized tribes: those whose charters were adopted before the effective dates of the 1988 amendments to the Act, and those whose charters were adopted after.

The Court concludes that the Plaintiff has properly invoked subject matter jurisdiction over this action under Title 25 U.S.C. § 476(d)(2). The Defendant is not entitled to summary judgment on the basis of subject matter jurisdiction.

### III. *Abstention.*

The Defendant next contends that the Court should abstain from exercising jurisdiction in this case, in light of the administrative proceedings pending before the Interior Board of Indian Appeals. The federal courts have recognized four categories of abstention: 1) *Pullman* abstention, which applies where a state court's determination of pertinent state law may moot a federal constitutional issue;[11] 2) *Thibodeaux* or *Burford* abstention, which applies when the federal court faces difficult questions of state law bearing upon policy issues of substantial public importance transcending the case at bar;[12] 3) *Younger* abstention, which applies when federal jurisdiction has been invoked to restrain state criminal or tax proceedings;[13] and 4) *Colorado River* abstention based upon special circumstances involving parallel proceedings in state court between the same parties.[14] The Defendant urges the Court to dismiss or stay these proceedings under the fourth category.

■■■ Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River* abstention, under which a district court may decline to exercise or postpone the exercise of jurisdiction, is an extraordinary and narrow exception, which applies only where there is a parallel proceeding in state court in-

volving the same issues with the same parties. *United States v. City of Las Cruces,* 289 F.3d 1170, 1182 (10th Cir.2002) (explaining that this Circuit requires a threshold finding of parallel state court proceedings to engage in *Colorado River* abstention); *Kansas Judicial Watch v. Stout,* 440 F.Supp.2d 1209 (D.Kan.2006). Because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," a district court should decline jurisdiction under *Colorado River* only in the "exceptional" circumstances where this threshold requirement is met.

■■■ In this case, the Defendant has not identified any parallel state court proceedings involving the same issues and parties, and has thus not met the threshold showing necessary for abstention under *Colorado River*. The Defendant has not shown, and does not contend, that any of the other forms of abstention apply in this case. Accordingly, the Defendant is not entitled to dismissal, a stay of the proceedings or summary judgment based on any of the recognized abstention doctrines.

### IV. *Exhaustion of Administrative Remedies.*

■■■ The Defendant argues that the Sac and Fox Nation has failed to exhaust its administrative remedies prior to seeking judicial relief. Under the doctrine of exhaustion of administrative remedies, a party is not entitled to judicial relief for supposed or threatened injury until the prescribed administrative remedies have

---

**11.** *See Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**12.** *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

**13.** *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**14.** *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

been exhausted. *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). An agency may, by rule, require that all appellate steps be taken within the agency, and that all remedies be exhausted before the applicant may seek judicial review. *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 452 (9th Cir. 1971). The Defendant contends that the Secretary's failure to approve the proposed amendments does not constitute final agency action, and thus is not subject to review. (Defendant's brief, p. 9).[15] The Secretarial election for approval of the proposed amendments was conducted on August 20, 2004, and the Secretarial Election Board certified the election that same day. Three days later, 29 tribal members filed an election contest with the Regional Director of the Southern Plains Region of the B.I.A., and with the Chairman of the Secretarial Election Board for the Southern Plains Region. The B.I.A., through the Acting Regional Director of the Southern Plains Region, denied the election challenge on December 14, 2004. Thereafter, the 29 protesters appealed the denial of their challenge to the Interior Board of Indian Appeals in *Harris–Noble, et al. v. Acting Southern Plains Regional Director,* IBIA 05–40–A. The Plaintiff Sac and Fox Nation of Oklahoma, as an interested party, filed a brief in opposition to the appeal, and the protester/appellants filed their final brief on August 8, 2005. To date, the Interior Board of Indian Appeals has made no decision on the appeal.

The Defendant contends that in order to exhaust its administrative remedies, the Plaintiff must comply with the appeal provisions established by the B.I.A. and the Interior Board of Indian Appeals, citing 25 C.F.R. § 2.6 and 43 C.F.R. § 4.314. Under 25 C.F.R. § 2.6, no decision of an administrative law judge or other B.I.A. official that is subject to appeal to a higher authority within the Department of Interior is considered final departmental action subject to judicial review under the Administrative Procedures Act unless the official to whom the appeal is made makes findings of exigency.[16] The applicable Interior Board of Indian Appeals regulation is similar. Under 43 C.F.R. § 4.314, no decision of an administrative law judge or B.I.A. official which is subject to appeal to the Interior Board of Indian Appeals will be considered final for purposes of judicial review under the Administrative Procedures Act unless the Board makes the decision effective pending a decision on appeal.[17]

As the Plaintiff contends, the Administrative Procedures Act provides that both

---

**15.** Defendant's brief, p. 9. The Defendant's citation to Section 767 appears to be a typographical error, as this Section deals with claims for lands owned by the Paiute Indians of Utah. The Plaintiff invokes jurisdiction in this case under Title 25 U.S.C. § 476(d)(2); Title 28 U.S.C. §§ 1331, 1361 and 1332. (Complaint, par. 3).

**16.** 25 C.F.R. Section 2.6 provides:

"(a) No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5

U.S.C. 704, unless when an appeal is filed, the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately."

**17.** 43 C.F.R. § 4.314 provides, in part:

"No decision of an administrative law judge, Indian probate judge, or BIA official that at the time of its rendition is subject to appeal to the Board, will be considered final so as to constitute agency action subject to judicial review under 5 U.S.C. § 704, unless it has been made effective pending a decision on appeal by order of the Board."

those agency actions made subject to judicial review by statute, and those final agency actions for which there is no other adequate remedy in a court, are subject to judicial review. Title 5 U.S.C. § 704. The Plaintiff's action for declaratory and injunctive relief is made subject to judicial review by statute, i.e., Title 25 U.S.C. § 476(d)(2). Thus, final agency action is not required in this instance.[18]

### V. Right to Disapprove Based Upon Fundamental Invalidity of the Election.

■ The Defendant argues that the Secretary is not required to approve amendments where there are challenges to the fundamental validity of the election, citing *Shakopee Mdewakanton Sioux Community v. Babbitt*, 906 F.Supp. 513 (D.Minn.1995), *aff'd*, 107 F.3d 667 (8th Cir. 1997). In *Shakopee*, the Secretary expressly rejected the results of an election to amend the tribe's constitution based on a dispute over whether certain persons who voted for passage of the amendments were actually tribal members. The dispute over voter eligibility presented a fundamental question as to whether the proposed amendments at issue in *Shakopee* had been approved by a majority of the eligible members of the tribe. In contrast to *Shakopee*, in this case the Secretary has not expressly refused to approve the amendments, based on concerns about the fundamental validity of the election; instead, the Secretary has failed to meet her statutory obligation to approve or disapprove the amendments within 45 days.[19] The Defendant is not entitled to summary judgment based on the contention that theoretically, the Secretary could have disapproved the amendments under *Shakopee*.

### VI. Failure to Join Necessary Parties.

■ The Defendant next argues, alternatively, that the tribal members challenging the election are necessary parties who should be joined in this proceeding. The Court applies a two-part test to determine whether a party must be joined under Rule 19, F.R. Civ. Pro. First, the Court determines whether an absent party is "necessary." If the absent party is necessary and cannot be joined, the Court must then determine whether the absent party is "indispensable" in the sense that the action cannot proceed in equity and good conscience in the absence of that party. *Davis v. United States*, 343 F.3d 1282 (10th Cir.2003); *Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir.1977). Rule 19(a) provides:

> "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined in the action if
>
> (1) in the person's absence complete relief cannot be accorded among those already parties; or
>
> (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition

---

**18.** The Defendant contends that by filing a brief with the Interior Board of Indian Appeals opposing the appeal, as "an interested party ... directly affected by the appeal," the Plaintiff is "actively engaged" in the pending administrative appeal brought by the 29 protesting tribal members. However, since the Plaintiff has demonstrated a statutory right to judicial enforcement of the Secretary's obligations under Section 476(d), the extent to which the Plaintiff may have participated in the administrative proceedings brought by the protesting tribal members is irrelevant.

**19.** The protesting members alleged twelve procedural irregularities, including that the ballot form did not accurately reflect the language of the tribe's pre-amendment constitution; that the ballots contained misstatements and errors, that some members did not receive ballots, that some members did not receive envelopes with their ballots, and other irregularities.

of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest, or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

Fed. R. Civ. Pro. 19(a). *See also Davis v. United States,* 343 F.3d 1282 (10th Cir. 2003).

 The protesting tribal members are not "necessary" parties under Rule 19(a)(1) because complete relief can be accorded to the Sac and Fox Nation and the Secretary in their absence. If the Court were to deny the Plaintiff's claim, the Secretary would prevail and be granted complete relief; if the Court were to grant the Plaintiff's claim and declare that the Secretary is deemed to have approved the amendments to the tribal constitution, the Plaintiff would be afforded complete relief.

Furthermore, it appears that the protesting tribal members are not necessary parties under Rule 19(a)(2) because they do not claim an interest relating to the subject of this action. The relevant inquiry for Rule 19(a) is not whether the absent person has an "interest," in the broad sense, in the outcome of the litigation, but whether cognizable legal rights of the absent person will be prejudiced by the suit's continuation. *Confederated Tribes of Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496 (9th Cir.1991). *See also BMG Music v. Vanxy, Inc.,* 1999 WL 493345 (S.D.N.Y.1999) (The term "interest," for purposes of Rule 19, must be one which is

legally protected, and not merely a financial interest or one of convenience); *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.,* 968 F.Supp. 1422 (D.Kan. 1997) (Interest must be legally protected, direct stake in the pending litigation). *But see Williams v. State Board of Elections,* 696 F.Supp. 1563 (N.D.Ill.1988) (Candidates for state judicial office were necessary parties in action for vote dilution under Voting Rights Act brought by Hispanic and black voters; minority voters sought to enjoin election for which candidates had already been nominated, thus giving candidates a colorable interest in the timing of the election); *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993 (10th Cir.2001) (Pottawatomi tribe challenged the Secretary's determination that a federal funding formula was static. Because the tribe's action may alter the future funding for the absent tribes, those tribes can claim interests relating to the subject of the action, and the district court properly found those tribes to be necessary parties).

The Defendant, as the party claiming that the protesting tribal members are necessary parties, bears the burden of proving the underlying facts that would support such status. *Davis v. United States,* 192 F.3d 951, 961–962 (10th Cir. 1999); *Rishell v. Jane Phillips Episcopal Memorial Medical Center,* 94 F.3d 1407, 1411 (10th Cir.1996). Here, the Defendant Secretary has not shown that the protesting tribal members have any unique, personal interest in the challenged election results, or that their objections to the election procedures rise to the level of an "interest relating to the subject matter of the action." *Davis v. United States, supra.*[20] Thus, the Defendant has not shown

---

**20.** In *Davis,* the Seminole Nation of Oklahoma claimed an interest in the subject matter of a suit by two of the Nation's bands challenging the bands' exclusion from judgment fund programs established with funds obtained from land claims judgment. The

court thus held that the Nation was a necessary party to the suit, inasmuch as a ruling on the merits in favor of the bands would have the practical effect of modifying the Nation's ordinances concerning an eligibility requirement that effectively prohibited the bands

that the protesting tribal members are necessary parties under Rule 19(a), and is not entitled to summary judgment on this basis.

## VII. *Mootness.*

■■■ The Defendant next argues that the Secretary of the Interior has already approved the amendments, and that the Plaintiff's claims for declaratory relief are therefore moot. The Defendant contends that the Secretary approved the proposed amendments prior to the election, subject to the approval of the tribal membership.

The Plaintiff contends that the Defendant's argument is "in direct conflict" with Title 25 U.S.C. § 476. Section 476(c) governs the procedure by which the Secretary calls and holds tribal elections, and the Secretary's duty to review proposed tribal constitutional amendments prior to calling an election, to determine whether they conflict with applicable laws.[21] Section 476(d) establishes a requirement that the Secretary approve or disapprove tribal constitutional amendments within 45 days

after the tribal election.[22] Based upon the structure and language of Section 476, it is clear that the Secretary's obligation to conduct a pre-election review of proposed amendments is separate from the Secretary's obligation to approve or disapprove the amendments within 45 days after the election. Thus, the Secretary's pre-election approval of the draft of the proposed amendments does not satisfy the Secretary's obligation to conduct a post-election review under Section 476(d).

## VIII. *Injunctive Relief.*

■■■ The Defendant next argues that the Plaintiff has not met the legal requirements for injunctive relief. In order to obtain a permanent injunction, the Plaintiff must show, among other things, that the balance of equities favors the issuance of an injunction. To make this showing, the Plaintiff must demonstrate that: 1) irreparable injury will occur if injunctive relief is not granted; 2) the threatened injury to the Plaintiff outweighs whatever damage an injunction may cause the Defendant; and 3) the granting of injunctive relief is

---

from participating in the judgment fund programs.

**21.** Section 476(c) provides:

"(c) Election procedure; technical assistance; review of proposals; notification of contrary-to-applicable law findings

(1) The Secretary shall call and hold an election as required by subsection (a) of this section—. . .
(B) within ninety days after receipt of a tribal request for election to ratify an amendment to the constitution and by-laws.
(2) During the time periods established by paragraph (1), the Secretary shall—. . .
(B) review the final draft of the constitution and bylaws, or amendments thereto to determine if any provision therein is contrary to applicable laws.
(3) After the review provided in paragraph (2) and at least thirty days prior to the calling of the election, the Secretary shall notify the tribe, in writing, whether and in what manner the Secretary has found

the proposed constitution and bylaws or amendments thereto to be contrary to applicable laws."

**22.** Section 476(d) provides:

"(d) Approval or disapproval by Secretary; enforcement

(1) If an election called under subsection (a) of this section results in the adoption by the tribe of the proposed constitution and bylaws or amendments thereto, the Secretary shall approve the constitution and bylaws or amendments thereto within forty-five days after the election unless the Secretary finds that the proposed constitution and bylaws or any amendments are contrary to applicable laws.
(2) If the Secretary does not approve or disapprove the constitution and bylaws or amendments within the forty-five days, the Secretary's approval shall be considered as given. Actions to enforce the provisions of this section may be brought in the appropriate Federal district court."

not harmful to the public interest. *Sierra Club v. Hennessy,* 695 F.2d 643, 647–650 (2nd Cir.1982); *Philadelphia Welfare Rights Organization v. O'Bannon,* 525 F.Supp. 1055, 1057–1058 (E.D.Pa.1981).

In its brief, the Plaintiff alleges generally that it has suffered, and is suffering, irreparable harm from the Secretary's failure to act on the proposed amendments. At the hearing on the motions, Plaintiff's counsel indicated that the Secretary's failure to act on the proposed amendments has caused some uncertainty for the Plaintiff in conducting its tribal business.

In light of the declaratory relief granted in this Order, the Court finds that the Plaintiff is unable to make the requisite showing of irreparable harm, and that the Plaintiff's claim for injunctive relief has become moot.

### IX. *Conclusion.*

The Plaintiff's prayer for injunctive relief is hereby DENIED. In all other respects, the Plaintiff's motion for summary judgment is hereby GRANTED. The Court finds and declares that the Secretary of the Interior has approved the amendments to the tribal constitution of the Sac and Fox Nation which are at issue in this lawsuit. The Defendant's motion for summary judgment is hereby DENIED.